AMPHITRITE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21433.    Promulgated May 22, 1951.

*Joseph E. Keller, Esq.*, for the petitioner.
*Paul E. Waring, Esq.*, for the respondent.

1142

**OPINION.**

OPPER, *Judge:* If this were a "cancellation of indebtedness case" under the *Kirby*[1] rule, the gain arising at the time the obligations became outlawed in 1944 might have been taxable in a prior year. If, on the other hand, the elimination of the debt had been accompanied by the petitioner's surrender of the property a question of gain on its disposition might have arisen. *Lutz & Schramm Co.*, 1 T. C. 682; *Mendham Corporation*, 9 T. C. 320. Here, however, no significant event occurred in 1945 and 1946, the years before us, and the sole question is whether petitioner's basis has been so reduced, first by the events of 1944 and second, by depreciation previously allowed, that none remains upon which to compute current depreciation deductions.

It is true that if petitioner's creditors allowed their obligations to lapse because petitioner's property had decreased in value, it might have advanced the argument in the earlier year that gain on that cancelation was not taxable under the "adjustment of purchase price" approach of the *Hirsch* case.[2] But the existence of such a situation is an exceptional one, and we have expressed the view that the rule is one of strictly limited application. *Denman Tire & Rubber Co.*, 14 T. C. 706, 715.

---

[1] *United States* v. *Kirby Lumber Co.*, 284 U. S. 1.
[2] *Hirsch* v. *Commissioner* (C. A. 7), 115 F. 2d 656.

The record, to be sure, leaves much to be desired. We are not apprised of the value of petitioner's property either at the time the indebtedness lapsed, nor in other tax years. Nor are we informed of the reasons, if·they are known, for which the creditors may have allowed the statute of limitations to run against them. But there are so many grounds upon which the failure to report as income any gain from the cancelation in the prior year can be explained—including the mere failure to report petitioner's income correctly—that it does not appear warranted to make the assumption that a readjustment of purchase price, as developed in the *Hirsch.* case, must have been the explanation. If, for example, the forgiveness was a gift or a contribution to capital, or if petitioner had remained insolvent even after the indebtedness was released, the obligation to report any income would have disappeared. *Helvering* v. *American Dental Co.*, 318 U. S. 322; *Chenango Textile Corp.* v. *Commissioner* (C. A. 2), 148 F. 2d 296; *Dallas Transfer & Terminal Warehouse Co.* v. *Commissioner* (C. A. 5), 70 F. 2d 95. But we are not aware of any rule that an adjustment of basis below cost would then be requisite, and we have been referred to no authority for any such proposition.

These are not in fact the contentions advanced by respondent but they seem to us the only ones for which any authority could be found. Respondent's actual position is that the purchase price consisted of part cash and part obligations; that when the obligations became unenforceable they disappeared as part of the consideration, leaving only the cash as the cost of the property; and that this amount has already been recovered ·through· previously allowed depreciation. Such a contention seems to us entirely inadmissible. Barring exceptional circumstances, the elimination of the indebtedness would have resulted in an income item in the prior year. *Denman Tire & Rubber Co.*, *supra.* If this were the correct treatment, it would be both unnecessary and unauthorized to add a further detriment to the taxpayer by proposing a corresponding reduction in basis.

It follows that the only theory upon which petitioner's basis could be regarded as having been reduced by the outlawing of its obligations is on an approach similar to estoppel. We should have to assume that the failure to report the cancelation as income was justified only by the *Hirsch* rule, and that since the Government was deprived of the tax, petitioner is consequently barred from asserting now that its basis has not been reduced as that case would presumably require. Not only, however, do the pleadings fail to suggest the presence of an issue relating to estoppel, but even if they had, the burden of such an affirmative defense would have rested upon its proponent. *Northport Shores, Inc.*, 31 B. T. A. 1013. There is no evidence from which we can conclude that the respondent's consequent burden of develop-

ing the facts with respect to the earlier year has been discharged.[3] It follows that petitioner's right to recover its original basis by adequate depreciation deductions has not been shown to have been destroyed. Since the parties expressly disavow any other issue,[4] such as the amount of the depreciation base [5] or the anticipated useful life of the property,[6] the deficiency seems to us to have been erroneously determined in this respect.

*Decision will be entered under Rule 50.*

---

[3] As the case was presented, the burden of showing such facts as whether the obligations had in fact become unenforceable cannot in any event be placed upon petitioner. Throughout the hearing respondent's counsel made it clear that he considered the legal effect of the events connected with the abortive sale by petitioner about 1930 to be the only question in the case as to basis, and the evidence appears to have been presented by both parties with that understanding. Indeed respondent's counsel did not even mention the outlawed notes. In the course of his opening remarks, he stated that "It is our position that the sale of the ship in 1930 established the value of the ship * * *" and subsequently manifested no disagreement with opposing counsel's affirmative reply to an inquiry by the Court as to whether the issues were clear. The contention as to the effect of the 1930 transaction on the basis of the property has now been abandoned by respondent. See *Helvering* v. *Wood,* 309 U. S. 344.

[4] The parties agree, on brief, that a question of loss carry-back from 1947 turns upon the decision as to basis.

[5] Both briefs take $100,000 to be the proper basis, after the events of 1932, and the cost of subsequent capital improvements is not in dispute.

[6] The lower rate is the one adopted by petitioner and no claim of overpayment is made.