Suckow Borax Mines Consolidated, Inc. v. Commissioner.
Suckow Borax Mines Consol. v. Commissioner
Docket No. 26577.
United States Tax Court
1953 Tax Ct. Memo LEXIS 190; 12 T.C.M. (CCH) 786; T.C.M. (RIA) 53244; June 30, 1953
Arthur McGregor, Esq., and Charles J. Higson, Esq., for the petitioner. H. A. Melville, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies in income tax and declared value excess profits tax for the year 1942 in the amounts of $13,697.66, and $4,856.37, respectively. In determining the deficiencies, the respondent has increased the amount of the net capital gain realized by petitioner in 1942 upon the sale of its interest in borax deposit property. The increase in net capital gain results from respondent's reduction of the adjusted basis of the property and the reduction of the expenses of sale. Petitioner contests most of the determination reducing adjusted basis. It agrees to a reduction *191 to the extent of only about $2,538.24. In its petition, as amended, petitioner claims that the adjusted basis should include $30,000 for legal fees expended, allegedly, to defend title to the property, which amount was not included in "basis" in its return. There are two groups of questions presented for decision: (1) Whether adjusted basis should include three specific items of alleged development cost totaling $34,252.43, plus $30,000 for attorneys' fees. (2) Whether payments to petitioner's officers and attorneys totaling $18,000 constituted expense of the sale of the property. Findings of Fact The facts which have been stipulated are found as facts. The stipulation is incorporated herein by reference. Petitioner is a Delaware corporation, organized on March 6, 1929, having its principal place of business in Los Angeles, California. It filed its return for 1942 with the collector for the sixth district of California. A. Mine Development Cost - $19,102.75. For several years prior to April 1, 1929 Dr. John K. Suckow was the owner of an undivided one-half interest in 240 acres of land in Kern County, California, containing deposits of borax. The owner of the other undivided *192 one-half interest in this property was Borax Consolidated, Ltd. (hereinafter sometimes called Borax), a subsidiary of Pacific Coast Borax Company (hereinafter sometimes called Pacific Coast). Having been unable to obtain the cooperation of either Borax or Pacific Coast for the joint development of the property and production and sale of the ore, Suckow, beginning about 1926 or 1927, undertook such operations independently on his own initiative and continued such operations until April 1, 1929. In the course of these operations he dug a shaft, installed mining machinery and equipment and other miscellaneous assets, and produced and sold substantial quantities of borax ore. Suckow made the original development of the property at his own cost and expense. The cotenant refused to participate in any way and served written notice upon Suckow that it would not be responsible for any part of it. In 1926 and 1927, Suckow had a vertical, three compartment shaft made into the borax bed down to a depth of 435 feet. Drifts or hallways ran from the shaft into the borax bed, and "laterals" were run at right angles to the drifts. In this manner areas of borax of 25 to 50 square feet were blocked *193 out. This work was preliminary to mining operations. Ore was mined after it had been blocked out by caving the blocks and removing the ore. On April 1, 1929, Suckow conveyed his undivided one-half interest in the 240 acres of borax deposit property in Kern County, hereinafter referred to as the borax mine, together with all mine development and improvements thereon made by him, to petitioner in exchange for 53,500 shares of its stock, plus the assumption by petitioner of certain liabilities of Suckow amounting to $7,192.40. This transaction came within the terms of sections 112 (b) (5), 112 (k), and 113 (a) (8) of the Internal Revenue Code, and accordingly petitioner's basis for gain or loss was the same as the basis of the transferor of the property, Suckow, plus any additional capital costs of its own. The opening entries in petitioner's books for the acquisition of the Kern County borax mine included an account for "Mine Development", and the following entries were made in this account: MINE DEVELOPMENT - including shaft, casing, etc. Labor
$20,108.53
Repairs and Supplies
1,702.04
Autos, Gas, Oil, Repairs
5,430.51
Compensation Insurance
1,229.05
Tel. and Tel.
353.35
Office Supplies
64.30
Travel Expense
379.30
Miscellaneous
37.33
Shaft, Casing, etc.
6,631.96
$35,936.37
*194 No partnership existed between petitioner and Pacific Coast Borax Company, and there was no basis upon which petitioner could charge Pacific Coast Borax Company with one-half of mine development expenditures. Originally, petitioner divided the ore as it was removed from the mine and placed one-half of it in a separate pile for disposition of the Pacific Coast Borax Company. When the segregated ore was not removed by the cotenant, it was eventually sold by petitioner and the proceeds appropriated subject to the outcome of the equity suit which had been brought by the cotenant. No claim was made by petitioner against the cotenant for mine development expenditures. Borax Consolidated, Ltd., the English corporation of which Pacific Coast Borax Company was a subsidiary, brought a suit in equity against petitioner and Suckow for an accounting of the profits realized from their operations by which suit Borax Consolidated claimed one-half of the profits. The suit was instituted some time prior to December, 1929. Although the judge who tried the litigation filed a memorandum opinion on December 28, 1933, no judgment was entered in accordance therewith because the parties subsequently in *195 1934, entered into a compromise agreement settling their dispute. Borax Consolidated claimed in the suit that petitioner and its predecessor, Suckow had removed about 16,000 tons of ore on account of which Borax Consolidated alleged it was entitled to receive $310,000. This claim was settled by the parties under their compromise agreement by the execution of a lease agreement dated September 17, 1934 wherein petitioner agreed to the leasing of its borax mine to Pacific Coast Borax Company. This lease gave Pacific Coast Borax the right to remove 16,291.5 long tons of ore from petitioner's share of the ore remaining in the mine, as a compromise of the claim of Borax Consolidated, Ltd. This was the sole settlement. Petitioner's records show additions to Mine Development Account subsequent to April 1, 1929. On December 31, 1932, the balance of this account was $38,055.51, and the balance of Secondary Mine Exit Account was $150.00, or a total of $38,205.51. The Revenue Agent's Report for 1942, the year here in question, addressed to petitioner, shows said sum of $38,205.51 as Mine Development per petitioner's books as of December 31, 1932, and disallows one-half of this amount, or $19,102.75. *196 This adjustment was also made in the Commissioner's 90-day letter. However, this adjustment was never made in prior years' revenue agents' reports where the amount of depletion allowable with respect to capitalized development cost was determined. The report dated September 25, 1936, covering 1934 and 1935, shows remaining capitalized cost at December 31, 1931, 1932, and 1933, of $37,343.81. If the amount of depletion allowed for 1929, 1930, and 1931 as shown by Revenue Agent's Report for 1942 of $861.70 is added back to the amount of $37,343.81, the total is $38,205.51, the same as the amount shown by petitioner's books and records for total unadjusted mine development as of December 31, 1931. The same basis was used for capitalized development costs in the Revenue Agent's Report dated October 23, 1942, for the years 1940 and 1941. There are no grounds for reducing Mine Development costs by one-half. Petitioner's depletion allowance as approved by the Engineer Revenue Agent for the period from the date of organization of petitioner in 1929 to the date of the sale of its mining property in 1942 was based upon a capitalized mine development of $38,205.51, an estimated tonnage recoverable *197 of 1,077,960 tons of commercial borax and a depletion rate of $.0354 per ton mined. The following is a tabulation by years of depletion allowed petitioner by the Commissioner of Internal Revenue together with the tonnage upon which the allowance was based: Depletion Based on Cost Estimated Tonnage of Ore Recoverable, 1,077,960 tons of commercial borax; Capitalized Mine Development per Revenue Agent's Reports, $38,205.51; Rate of Depletion, - $38,205.51 + 1,077,960 tons = $.0354 per ton mined. Tonnage Upon Which
Depletion
Depletion Allowance
Year
Allowed
Was Based
1929
$ 22.16
626
1930
552.08
15,595
1931
287.56
8,120
1932
None
None
1933
None
None
1934
183.55
5,185
1935
509.76
14,400
1936
613.77
17,338
1937
669.06
18,900
1938
739.86
20,900
1939
810.66
22,900
1940
881.50
24,900
1941
952.19
26,898
1942
1,023.06
28,900
Total
$7,245.11
204,662 tons
Developmental cost, adjusted to the total amount of $38,205.51 was expended during the developmental period of the property, of which $19,102.75 is one-half. Petitioner did not receive reimbursement of $19,102.75 at any time or in any way from either Borax or Pacific *198 Coast. Petitioner has not recovered $19,102.75 developmental expense from net receipts of minerals sold nor through depletion. B. Mine Development Cost - 2nd Mine Shaft - $7,957.28. Involuntary bankruptcy proceedings were brought against petitioner, Suckow Borax Mines Consolidated, Inc., in 1931. Petitioner's borax mine was closed down at the end of 1932 and it did not resume operation until the end of 1935. The property of petitioner passed into the hands of the trustee in bankruptcy in the year 1933, who held it until 1937, when all of the creditors were repaid. During this period the trustee and not the corporation's officers had possession of the accounting records of petitioner. The trustee in bankruptcy kept these records and filed income tax returns for petitioner. In September, 1934, in connection with the compromise settlement above referred to, the petitioner's mine was leased to Pacific Coast Borax Company for a period of ten years. The lease provided for a minimum rental of $2,500 per month for the first year, and further provided that from rentals the sum of $12,000 might be withheld by the lessee to pay the lessor's one-half of the cost of improvements upon the *199 mine. This work consisted of sinking a second shaft in the mine, running a connecting drift from shaft No. 1 to shaft No. 2, making an ore pocket, making improvements to shaft No. 1 and repairs. In making petitioner's federal corporation income tax return for the year 1934, the trustee in bankruptcy reported only the net rentals received of $10,773 and did not report as income the $12,000 which was withheld from rents by the lessee. In 1936 the lessee paid to petitioner the sum of $1,096.18, representing the balance of the sum of $12,000 which was not expended on the development work. The $1,096.18 refunded was reported as income on the federal income tax return of the trustee in bankruptcy for petitioner for the year 1936. The lessee, Pacific Coast Borax Company, rendered to petitioner, monthly progress reports showing work performed and expenditures made, one-half of which was charged against said withheld sum of $12,000. Before the mine could reopen the California Industrial Accident Commission required that a second shaft to the mine be constructed. This shaft was required for safety purposes and was necessary to provide the mine with circulation of air. It constituted development *200 cost. The deepening of the Shaft #1 and construction of the ore pocket were for the purpose of facilitating removal of the ore and also constituted improvements. During the period these improvements were made the mine was closed down and no ore was removed. The expenditures were as follows: Date
Shaft #1
Shaft #2
Drift
Ore Pocket
Total
12/1/34
$1,732.81
$ 1,732.81
1/1/35
915.37
915.37
2/9/35
428.17
428.17
3/9/35
$371.65
371.65
4/9/35
5/9/35
277.29
$1,816.01
2,093.30
6/9/35
32.07
2,698.25
$ 7.05
2,737.37
7/8/35
580.76
3,140.08
15.00
3,735.84
8/7/35
158.62
1,449.64
1,608.26
9/4/35
655.29
411.43
1,066.72
10/8/35
438.32
149.24
587.56
11/7/35
41.61
107.52
297.04
446.17
12/5/35
176.47
14.88
191.35
$5,436.78
$9,637.81
$371.65
$468.33
$15,914.57
One-half of the total of $15,914.57, or $7,957.28, is development cost of petitioner and is part of its cost or other basis of the property. The work done was an "extraordinary" development which benefited the entire mine and facilitated increased production. The cost thereof was not an expense of maintaining *201 existing output. The petitioner properly entered this item on its books as development expense by entry dated December 31, 1942. C. Cost of Drill Holes - $7,192.40. Petitioner's predecessor, Suckow, expended at least $7,192.40 proving the value of the borax deposit property by having four test holes drilled upon the property. Two holes were drilled to a depth of 450 feet; one, to a depth of 415 feet; and one, to a depth of 275 feet, or a total of 1,575 feet of drilling. The cost of drilling such holes, at the time of the drilling, was from $4.50 to $5.00 per foot. The cost of drilling of test holes was a development expense, and petitioner acquired the benefit of this development when the interest in the borax deposit land was transferred by Suckow. Petitioner acquired Suckow's interest in the borax deposit property and the development and improvement thereof in a tax-free exchange. The exchange of property for stock of petitioner was made in the following way: On April 1, 1929, Suckow transferred all of his interests in the borax mine to petitioner. His interests comprised an undivided one-half interest in 240 acres of borax deposit land, and the ownership of mine development, *202 buildings and equipment. The latter had an agreed value of $89,844.12. For convenience, all of the items making up the latter amount are referred to hereinafter as "miscellaneous assets." Suckow received common and preferred stock of petitioner in exchange for the borax mine property. The parties to the transaction agreed upon a basis for issuing the stock, which was that the no par common capital stock would be issued in exchange for Suckow's interest in the 240 acres of land, plus the assumption by petitioner of liabilities of Suckow in an agreed amount, and the preferred stock having a par value of $10 per share would be issued for the "miscellaneous assets." The parties agreed that petitioner should compensate, or reimburse, Suckow for his expenses in proving the value of the 240 acres by having the test holes drilled, and that since that work cost Suckow $7,192.40, petitioner would reimburse Suckow by assuming liabilities of his for accrued pay roll, taxes, and other accounts payable in the amount of $7,192.40. Under this agreement, Suckow received 53,500 shares of petitioner's common stock for his interest in the land and release from liabilities of $7,192.40 which petitioner *203 assumed; and Suckow received 8,000 shares of petitioner's preferred stock having a par value of $10 per share. Petitioner's common stock had a fair market value of $10 per share in April, 1929. The cost of the development consisting of the test holes was not included in the book value of any of the "miscellaneous assets" of $89,844.12, and the parties regarded such cost as something in addition to the value ascribed to the interest in the 240 acres of land. The cost of drilling the test holes was never included in the cost of sinking the first shaft $35,936.37, - "Mine Development." Also, the cost was never capitalized on the books. The original entries in petitioner's books relating to all the capital assets which it acquired from Suckow contained several errors. These were corrected by adjusting entries which were made in petitioner's books subsequently. The subsequent entries correctly reflected the transaction with Suckow as described above. The adjustments made on petitioner's books to correct the errors wrote down the value of the interest in the 240 acres of land from $11,105,000 to $535,000. A notation was made in the books that the addition of the cost of the test holes, *204 $7,192.40, increased the book value of the land to $542,192.40. The item of $7,192.40 was carried in petitioner's books in the account for "Lands, Leases, and Easements" after the corrections were made. The item of $7,192.40 is essentially an item of mine development and it is properly included in petitioner's adjusted basis. D. Legal Fees and Costs - $30,000. In connection with the defense of the suit for an accounting of profits brought by Borax, and in connection with the involuntary bankruptcy proceedings, petitioner incurred liability for attorneys' fees for services rendered in the amount of $30,000, which amount was paid on petitioner's behalf by Suckow who was thereafter reimbursed by petitioner. Payments to Petitioner's Officers and Attorneys. Tobeler: In 1939, petitioner's chief officer, Suckow, decided that petitioner's mining property should be sold. One reason for this decision was that the lease with Pacific Coast would terminate in 1944. Paul O. Tobeler became secretary of petitioner in 1940. He was an employee, working for a salary. Suckow and his wife, Ruth, who was a stockholder, believed that Tobeler could render valuable services to petitioner in connection *205 with obtaining a new lease or a purchaser of petitioner's property. Petitioner, upon authorization of its directors, entered into a contract with Tobeler in September, 1942, in which petitioner agreed to pay him a minimum commission of $10,000 for making a sale of petitioner's property. On December 29, 1942, petitioner sold its interest in the borax mine property, the 240 acres of borax land, for $350,000. Petitioner paid Tobeler $10,000 under its agreement with him. Tobeler rendered extensive and substantial services to petitioner in connection with the sale which extended over a period of two years. He was paid a salary, which was increased from time to time, for his services as secretary of petitioner, which services were separate and distinct from his efforts in connection with the sale of petitioner's property. Tobeler's efforts contributed in a substantial way to the negotiation and completion of the sale of petitioner's property. The payment of $10,000 to Tobeler was payment for his services relating to the sale of petitioner's mine. It did not constitute extra compensation for the services of Tobeler as an employee of petitioner. It was paid pursuant to a bona fide contract *206 with Tobeler under which petitioner agreed to pay him a commission in the event he negotiated a sale. The payment of $10,000 was an expense of the sale. Ruth Suckow: Ruth Suckow, wife of John K. Suckow, became a director of petitioner in 1935, vice president in 1937, and president in 1941. Except for a salary of $150 a month for the first three months of 1940, representing compensation for services rendered as vice president, she received no compensation for services rendered to the corporation until the payment of $5,000 in a lump sum in 1942 at the time of the sale of the corporation's properties to Pacific Coast. Said payment was made in accordance with an understanding between Ruth Suckow and petitioner reached in April, 1940, to the effect that she would receive no salary for her services as an officer of petitioner until a later date. Payment of the $5,000 was made pursuant to a resolution adopted at a special meeting of petitioner's board of directors on December 29, 1942, the minutes of which contained the following: "Mr. Tobeler then states that on or about April 5th, 1940, at a Board of Directors' meeting, Mrs. Ruth Suckow had agreed not to draw a salary from the corporation *207 until such time as her work and effort in behalf of the corporation could be more specifically evaluated; that such a time has now come inasmuch as Mrs. Suckow has regularly attended to the affairs of the corporation and has rendered valuable services in making it possible for the corporation to make such an advantageous deal with its borax properties and that such services warrant the payment of a bonus in lieu of a salary, covering the period of April, 1940, to December, 1942, in the amount of $5,000. A respective demand for such back salary has been made by Mrs. Suckow to the corporation. Therefore, Mr. Tobeler motioned that such a bonus be paid to Mrs. Suckow. Mrs. Friedrich seconded the motion - Mr. Suckow abstaining from voting - and it was unanimously carried and "RESOLVED, that Mrs. Ruth Suckow be and she is hereby granted a bonus of $5,000 in lieu of salary in remuneration for valuable services rendered by her to the corporation over a period of two years and eight months." Ruth Suckow did not perform any significant services in connection with the sale of petitioner's mining properties to Borax. Legal Fees: During the course of negotiations for the sale of petitioner's *208 mine, petitioner engaged the services of the law firm of Mackay, McGregor & Reynolds, who studied each transaction proposed and advised petitioner as to the tax consequences attendant thereon. Such services included consideration of and legal advice with respect to the tax consequences of the sale ultimately consummated with Pacific Coast. Petitioner paid the sum of $3,000 to Mackay, McGregor & Reynolds, as a fee for legal services rendered to petitioner in connection with the sale of the property. Legal services not relating to the sale of the property were also rendered by Mackay, McGregor & Reynolds in 1942. Such other legal services were made the subject of a separate billing and were separately paid for by petitioner. In addition to the fee of $3,000 paid to Mackay, McGregor & Reynolds, petitioner paid another attorney, R. R. Woolley, the sum of $5,000 for legal services rendered in connection with the sale of the property. The fee to Woolley is not in issue in this proceeding. The fee of $3,000 paid to Mackay, McGregor & Reynolds in 1942 was an expense directly related to the sale of the property and was part of the expense of the sale. Opinion Adjusted Basis of Property *209 Sold in 1942: The petitioner contends that the following should be included in the adjusted basis of the property sold in 1942: 1. Mine Development Cost, expended
by Suckow for shaft
$19,102.75
2. Mine Development Cost, second
shaft
7,957.28
3. Cost of drill holes
7,192.40
4. Legal fees and costs
30,000.00 Each item will be considered separately. A. Mine Development Cost - $19,102.75. Whether or not, the alleged item of $19,102.75 should be included in the adjusted basis is a question of fact. Respondent has advanced several arguments, some of them in the alternative, in support of his determination that this item is not includible. No purpose is served in setting forth his various contentions, nor petitioner's replies thereto made on the brief. The findings of fact which have been made, relating to this item, support petitioner's claim that this item is includible. Upon consideration of all of the evidence relating to this item, we conclude as follows: (1) The item of $19,102.75 was expended during the developmental stage of the property. (2) The item was, in the first instance, properly capitalized as developmental expense. (3) Developmental expense *210 in the amount of $19,102.75 was not recovered by petitioner from net receipts of minerals sold during the developmental stage, and it was not recovered through depletion by charging to the capital account expenditures not recovered by sale of minerals during development. We are satisfied that the provisions of section 29.23(m)-15 of Regulations 111 have not been avoided. (4) That petitioner was not reimbursed in any way by Borax or Pacific Coast for developmental expense in the amount of $19,102.75. (5) The item should not be reduced by $2,443.72. (6) Petitioner did not for the ten year period 1932 to 1942 "carry the entire amount in its mine development account without current, annual charge-offs for amortization", as respondent contends. Petitioner, on brief, has clearly shown errors and fallacies in respondent's contentions. To set forth all of the details, the procedures followed in taking annual charge-offs for depletion, the history of petitioner's operations of the mine, and of its predecessor, Suckow, and of the litigation with Borax, and of the settlement of that litigation would involve, unnecessarily, a long narration of circumstances and of testimony, all of which is *211 now part of the record in this proceeding, which covers a period of about 16 years. Petitioner would be put to unreasonable requirements of proof, considering all of the circumstances, if in this proceeding, its bookkeeping records and the acceptance by respondent's agents of its depletion allowances over a period of several years prior to 1942 were not given effect in considering the proof presented here by the petitioner. We are satisfied that petitioner was not reimbursed by Borax or Pacific Coast for the disputed expenditures of $19,102.75. Respondent's contention to the contrary is based upon conjecture and suppostion rather than upon fact. We are satisfied, also, that the amount in dispute was not recovered through net operations receipts. Prior to 1942, respondent's agents did not question the inclusion of the disputed amount which was set up on petitioner's books; they accepted the item as correct and proper for a period of about 13 years. Although it is sometimes held, under the facts and circumstances of a particular case, that bookkeeping entries are not controlling, we think it is reasonable and proper in this proceeding, upon the entire record, to give the bookkeeping *212 entires relating to this disputed item considerable weight, and we have done so in arriving at our conclusion. Some of respondent's contentions are based upon an erroneous understanding of facts which have been stipulated or otherwise established in this proceeding. It is held that respondent erred in excluding developmental cost in the amount of $19,102.75 from adjusted basis. B. Mine Development Cost - 2nd Mine Shaft - $7,957.28. Originally petitioner contended that the cost to it of improvements in the original mine shaft and of constructing a second shaft amounted to $9,633.82, but petitioner now claims that such alleged capital expense was only $7,957.28. The difference, $1,676.54, represents reduction of the adjusted basis of the borax mine property to which petitioner now agrees. The improvements in question were made by the lessee, Pacific Coast, under the lease agreement of September 17, 1934 wherein it was provided that one-half of the cost of such work, not to exceed $12,000, must be borne by the lessor. The lessee was entitled, under the lease, to withhold the lessor's one half share of the costs out of rentals. The respondent contends that this item should *213 be excluded from adjusted basis because petitioner has not shown that the expense was borne by it in the amount claimed, and because it did not constitute development cost. With respect to the latter contention, respondent does not cite any authority in support thereof. His first contention presents a question of fact. We are satisfied from the evidence that the cost of the work to the extent of $7,957.28 was in effect paid by petitioner, and find as a fact that such item represented developmental cost of petitioner. Petitioner entered this item of expense in its books as development cost by an entry dated December 31, 1942. It is held that the expense represented a cost of development. The work constituted improvement which is properly classed as "extraordinary development." See G.C.M. 13954, XIII-2, C.B. 66. The entire mine was benefited by the construction of the second shaft, the deepening of the first shaft, and the construction of the ore pocket increased the value of the mine. The construction of the second shaft was required by the California Industrial Accident Commission as a prerequisite to re-opening the mine which had been closed pending bankruptcy proceedings. It *214 was a safety exit and an air shaft for ventilating the entire mine. The mine could not be operated until the work in question had been completed. The expenditures in question were not made to maintain existing output. Cf. Guanacevi Mining Co. v. Commissioner, 127 Fed. (2d) 49. The petitioner was entitled to capitalize at least $7,957.28 of the cost of the improvements, and that amount is includible in adjusted basis. See, also, Connellsville Central Coke Company, 27 B.T.A. 771. In view of our holding under this question, petitioner, as it recognizes, will be required to recompute its income tax for 1934 under section 3801 of the Code by including therein, in income, the amount of $7,957.28; and there must be added to depletion allowances from 1935 to December 31, 1942, an amount with respect to this addition to mine development. The basis which has been set out in various revenue agent's reports is proper and should be used. Effect will be given to this adjustment of depletion under Rule 50. Respondent does not contend that there is estoppel, or that he was misled by the erroneous treatment of this item in 1934 by the trustee in bankruptcy who failed *215 to include in income the amount of rents withheld by the lessee for the purpose of paying for the improvements. Petitioner is not estopped from making the adjustment for 1934 and including this item of development cost in adjusted basis. In somewhat analagous situations, it has been held that a taxpayer is not estopped from making like adjustments. Cf. Pancoast Hotel Company, 2 T.C. 362; Amphitrite Corporation, 16 T.C. 1140, 1143, 1144; Capital National Bank, 16 T.C. 1202, 1210, 1212; and American Light and Traction Company, 42 B.T.A. 1121, affd. 125 Fed. (2d) 365. C. Cost of drill holes - $7,192.40. The question whether petitioner is entitled to include in capital costs, i.e., in adjusted basis, the sum of $7,192.40, the cost of proving the value of the borax deposit property by having four test holes drilled on the property, does not involve any fact question about the actual cost. On brief, the respondent states, "It must be conceded that this item represents an element constituting petitioner's actual cost of the assets acquired." The problem under this issue, as we see it, is whether there would be a *216 duplication of the item of expense of $7,192.40 if we were to sustain petitioner's contention that it is properly includible in its cost or other basis of the borax mine property and all improvements and development thereof. It is correct, as respondent points out, that the petitioner's cost or other basis of all of the mine property received from Suckow in exchange for its stock is the same as Suckow's cost or basis was because petitioner acquired the property in a taxfree exchange within the scope of sections 112 (b) (5), 112 (k), and 113 (a) (8) of the Code. Petitioner agrees to this, of course. That being so, the first inquiry should be whether the cost of drilling the test holes was part of Suckow's cost, or basis, which carried over to petitioner in petitioner's setting up of its capital accounts reflecting the receipt of all of the borax mine property. Petitioner, in effect, says "No," that $7,192.40 was not hidden or included in some general figure on its books, so that no duplication of an item of basis is involved in its claim under this issue. Petitioner reliesf upon bookkeeping entries which corrected alleged errors in original entries, and upon the terms of the exchange *217 to which it and Suckow agreed. The answer to the question presented depends upon whether petitioner is entitled to rely upon corrected entires in its books reflecting the entire transaction with Suckow, i.e., whether the bookkeeping entries reflect the true facts. The problem is one of accounting. Upon consideration of all of the evidence we conclude that the original entries which treated Suckow's costs of $7,192.40 as an offset to the amount of the itemized assets having a book value of $89,844.12 at the time of the exchange was wrong, as petitioner contends: that corrections were made whereby $7,192.40 was entered in the account entitled "Lands, Leases and Easements" in addition to the book value of the half interest in the borax deposit lands, $535,000; and that the "basis" of the interest in the land, of Suckow, did not include $7,192.40 in the bookkeeping entries in petitioner's books, after the exchange, so as to cause a duplication of this item if petitioner's contention here is sustained. In other words, that Suckow's basis for the land, and, therefore, petitioner's basis under the tax-free exchange was $535,000, plus $7,192.40 - the cost of drilling the test holes, or *218 $542,192.40. We cannot perceive that some of the details of the agreement under which petitioner acquired all of the mine property in exchange for its stock negate this conclusion, such as the agreement that petitioner would pay liabilities of Suckow in an amount equal to his development cost of $7,192.40, the cost of drilling test holes. Undoubtedly that provision in the exchange agreement gave rise to the way in which entries were made on petitioner's books for the capital assets acquired in the exchange. If that agreement had not been made, then, as we understand the facts, the entry would have been simply one for an asset having a "cost" or other basis of $542,192.40, representing Suckow's cost or other basis. Respondent, we believe, either misconstrues the facts underlying the bookkeeping entries, or he places form above substance. We think that in this instance the corrected bookkeeping entries reflected facts and substance, and that petitioner is entitled to rely upon them. We find no error in petitioner's contention and hold that it is entitled to include in its "cost" or other basis the amount of $7,192.40. Respondent does not claim that the expense of drilling the test *219 holes was a capital expense which, but for his position here, would be included in adjusted basis. Petitioner concedes that the amount, $7,192.40, must be reduced by depletion and that this will be done in the Rule 50 recomputation. We are satisfied that there is no lack of good faith in the matter of the corrections of the bookkeeping entries. The problem under this issue is a complicated one due to what appears to have been a sort of "bungling" of the accounting entires in petitioner's books. No doubt the item of the cost of drilling the holes should have been entered in the account for "Mine Development" increasing it from $35,936.37 to $43,128.77. If that had been done, the question sub judice probably would not be before us. We have given consideration to all of the errors, corrections, and complications and it is our view that petitioner is entitled to include $7,192.40 in the adjusted basis of the property. The item appears to be one of minor importance because there will be an adjustment downward of it for depletion. Some things are not clear to us, but one thing is very clear - there seem to have been an endless series of unnecessary errors in petitioner's accounting. *220 Even so, petitioner now should not lose the small benefit of the item in question upon giving a fairly satisfactory explanation of the various bookkeeping errors and adjustments. D. Legal Fees and Costs - $30,000. Respondent agrees that petitioner paid $30,000 for attorneys' fees. The fees were paid for services rendered by attorneys in two separate proceedings. One was the defense against the suit of Borax for an accounting of all the profits realized from petitioner's operations of the borax mine. That suit was instituted against both petitioner and Suckow. Borax claimed that it was entitled to one-half of the profits. (See "Mine Development Cost - $19,102.75" in the Findings of Fact.) The other litigation was the involuntary bankruptcy proceeding brought against petitioner in 1931. (See "Mine Development Cost - 2nd Mine Shaft - $7,957.28" in the Findings of Fact.) Petitioner has not shown what part of the total sum of $30,000 represented payment for legal services that were rendered in each of these two legal proceedings and, therefore, we cannot make any allocation thereof. Petitioner has not attempted, under its burden of proof, to make any allocation. Petitioner makes *221 the general contention that both legal proceedings jeopardized its property; that the cost of defending itself in both proceedings had the result of saving its property; and that, therefore, the sum paid for legal services constitutes a capital expense which is properly includible in the basis of its property. The petitioner specifically claims that the expenditure in question was "incurred in defending title to property or in recovering property." Petitioner relies upon Cohen & Sons, 42 B.T.A. 1137; Porter Royalty Pool, Inc. v. Commissioner, 165 Fed. (2d) 933; and West End Consolidated Mining Co., 3 B.T.A. 128. The respondent argues that the suit for accounting and the bankruptcy proceedings did not in any way involve the defense or perfection of title to any specific property. Respondent cites Hochschild v. Commissioner, 161 Fed. (2d) 817. In the Hochschild case, the taxpayer incurred expenses in successful defense of an action brought against him for an accounting. In holding that the expenses were not capital expense but were deductible expense, the court said: "but the title as such was not perfected in any way by his expenditures *222 for legal assistance." One judge of the Court of Appeals observed in a separate opinion (Judge Frank) that "To rule otherwise would be to say that defense of any suit is a defense against an attack on title to property, since an adverse judgment (through levy of execution or otherwise) may diminish a defendant's property, * * *." We do not know much about either of the legal proceedings in connection with which petitioner paid $30,000 for legal services. The record does not show, for example, what the pleadings set forth in the suit of Borax for an accounting. But petitioner admits that this action was for an accounting. Therefore, the question is controlled by Kornhauser v. United States, 276 U.S. 145. See also: Rassenfoss v. Commissioner, 158 Fed. (2d) 764, and the cases cited therein; and Hochschild v. Commissioner, supra.The rule is that legal expenses incurred in defense of a suit for an accounting are deductible as ordinary and necessary business expense. Therefore, petitioner errs in urging that they can be capitalized. At least, petitioner *223 has not proved facts which take the issue here outside of that rule, and the evidence does not establish that both suits involved defending title or recovering property. With respect to the expense of defending a suit in bankruptcy, the evidence fails, also, to establish the facts required to support a holding that such expense is capital expense. But even if we were satisfied that such expense is capital expense, we cannot make any finding upon the basis of which we can make an allocation of the sum of $30,000 to the cost of defending the suit in bankruptcy. Petitioner advances other arguments but we think they lack merit, under the facts, and consequently consider it unnecessary to discuss the alternative contentions. Also, the authorities cited by petitioner are distinguishable on their facts. It is held that petitioner is not entitled to include $30,000, the cost of legal services, in the adjusted basis of the property. Payments to Petitioner's Officers and Attorneys. Tobeler. - Respondent concedes that the $10,000 paid to Tobeler was a reasonable amount to compensate him for the services which he rendered in connection with the sale of petitioner's property to Pacific *224 Coast. Respondent contends, however, that since Tobeler was an employee of petitioner during the period in which such services were rendered, the payment to Tobeler was nothing more than deferred salary paid in a lump sum which, therefore, constituted an ordinary and necessary business expense allowable as a deduction from gross income under section 23 (a) (1) (A). Respondent's determination with respect to the $10,000 paid to Tobeler cannot be sustained. Section 23 (a) (1) (A) refers to ordinary and necessary expenses paid or incurred in carrying on any trade or business. In Acer Realty Co. v. Commissioner, 132 Fed. (2d) 512, the issue was whether or not salaries paid to officers of a corporation whose chief business was leasing certain land which it owned, were deductible as ordinary and necessary business expense under section 23 (a), where during the years for which such salaries were paid the time of such officers was devoted principally to managing the construction of certain buildings. The court held that the services in question were not rendered in carrying on the ordinary business of the corporation, but were performed, rather, in connection with the acquisition *225 of capital investments, and, therefore, should have been capitalized. The rule, we think, is well established, that where one, not regularly engaged in the real estate business, pays a commission in connection with the sale of real property, such commission is properly added to the seller's cost or other basis for the purpose of determining gain upon the sale, and cannot be allowed as an ordinary and necessary business expense under section 23 (a) of the Code. Irma Jones Hunt, 47 B.T.A. 829, 839; Mrs. E. A. Griffin, 19 B.T.A. 1243. This rule is equally applicable in the case of a corporation as in the case of an individual. Juniper Hunting Club, Inc., 28 B.T.A. 525, 529. Petitioner was not engaged in the real estate business. Since the $10,000 paid to Tobeler represented a commission which he had earned by his successful efforts in selling the property and not deferred salary for ordinary services rendered as an officer of petitioner, the cases cited above are controlling. The sum of $10,000 paid to Tobeler should be included in petitioner's basis *226 for the purpose of determining the amount of gain realized upon the sale of the property. Respondent's determination is reversed. Ruth Suckow. - The situation with respect to the $5,000 paid to Ruth Suckow is quite different. Ruth Suckow, unlike Tobeler, rendered no significant services in connection with the sale of the property. The payment made to her represented payment of deferred compensation for her services to the corporation as an officer. Respondent's determination is sustained. Attorneys' Fees. - With respect to the $3,000 fee which petitioner paid to the firm of Mackay, McGregor & Reynolds for legal services rendered in 1942, respondent has determined that this amount may not be included in petitioner's basis for determining gain upon the sale of the property. Respondent has so determined because of his conclusion, that this legal fee was paid for services only remotely connected with the sale so that the amount thereof, while allowable as an ordinary and necessary business expense, does not constitute an expense of sale. In support of his determination, respondent cites the cases of Arcade Co. v. United States, 97 Fed. Supp. 942, and Francis A. Parker, 6 T.C. 974. *227 Respondent admits that these cases are not squarely in point, but takes the position that the facts of those cases present analogous situations. This might be true if the services rendered by Mackay, McGregor & Reynolds were, as respondent contends, only remotely connected with the sale. However, the evidence establishes that the services, for which the $3,000 in question was charged and paid, were directly related to and only to, petitioner's efforts to sell and the final sale. The fact that the advice rendered by the Mackay firm related to the tax consequences of such sale is of no moment. The fees for these services were an expense of sale. Respondent's determination is reversed. Decision will be entered under Rule 50.